UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAZVINEYI GRACE MUTSEYEKWA,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 3:26-cv-08468-JSC<br><br>**ORDER RE: PRELIMINARY INJUNCTION** |

Petitioner Hazvineyi Grace Mutseyekwa filed a habeas petition and motion for a temporary restraining order (TRO), seeking to enjoin her detention by the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"). (Dkt. Nos. 1, 2.[1]) The general duty judge granted Petitioner's motion, ordered her release from custody, and enjoined Respondents from re-detaining her absent prior notice and a pre-deprivation hearing. (Dkt. No. 4.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion for a preliminary injunction appropriate for decision without oral argument and vacates the September 9, 2026 hearing. Having reviewed the parties' submissions, and the relevant legal authority, the Court GRANTS Petitioner's motion.

**BACKGROUND**

Petitioner is a native of Zimbabwe who has lived in the United States for the past 21 years. (Dkt. No. 1 at ¶ 1.) In 2005, she was granted withholding of removal after an Immigration Judge found it more likely than not she would suffer persecution if returned to Zimbabwe. (*Id*. at ¶ 23; Dkt. No. 2 at 6.) In 2014, Petitioner was placed on an Order of Supervision. (Dkt. No. 8-1 at ¶ 7;

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Dkt. No. 8-2 at 8.)

Petitioner has complied with all the conditions of her release and has established significant community ties in Northern California over the past two decades working as a caregiver and attending St. Anne's Church in Fremont. (Dkt . No. 1 at ¶¶ 23, 28; Dkt. No. 2 at 6.) There is no evidence of any criminal record and Petitioner has serious medical conditions and requires daily medication for diabetes, high blood pressure, high cholesterol, and schizophrenia. (Dkt. No. 2-1 at ¶ 9.)

On August 11, 2026, Petitioner received a call from Immigration and Customs Enforcement (ICE) ordering her to report at the ICE office in San Francisco three days later. (Dkt. No. 1 at ¶ 24.) Petitioner appeared as directed, on August 14, 2026, and was arrested and informed she would be removed to Cameroon, a third country to which she has no ties. (*Id*. at ¶ 25.) Later that day, Petitioner filed the underlying habeas petition and motion for a TRO. The general duty judge granted the TRO and Respondents were ordered to show cause as to why a preliminary injunction should not issue. (Dkt. No. 4.)

**DISCUSSION**

"A plaintiff seeking a preliminary injunction must establish that [1] [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citation omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citing *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors in this analysis "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**A. Subject Matter Jurisdiction**

Respondents insist the Court lacks jurisdiction over this Petition because "Courts lack

jurisdiction to review a decision to commence or adjudicate removal proceedings or execute removal orders" under 8 U.S.C. § 1252(g). (Dkt. No. 8 at 11.) This "argument is a non-starter." *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *2 (N.D. Cal. May 22, 2026).

Habeas petitions in which petitioners make "statutory and constitutional challenges to post-removal-period detention" are not challenges to the Attorney General's discretion. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) ("we have been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders"). "Petitioner does not seek relief from this Court from a decision to execute a removal order ... [and instead] challenges solely the propriety of [her] detention, not the core proceedings involved in [her] removal." *Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *4 (N.D. Cal. Aug. 26, 2026) (quoting *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *2 (S.D. Cal. Oct. 22, 2025)). Indeed, Respondents themselves concede Section 1252(g) does not bar due process challenges. (Dkt. No. 8 at 11-12.)

**B. Serious Questions on the Merits**

Petitioner has demonstrated serious questions on the merits of her procedural due process claim. The Fifth Amendment guarantees "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

First, Petitioner's lengthy community ties and the government's decision not to detain her at any point over the last 11 years she has been released on an Order of Supervision has given rise

to a protected liberty interest in remaining out of immigration custody that can only be taken away if the government's procedure for doing so accords with due process. Courts throughout the Ninth Circuit have held that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (stating the decision to release is "based on an evaluation[,]" the individual "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life," creating "at least an implicit promise" that the parole—or decision not to detain—will be revoked only if the individual fails to live up to the applicable "conditions.").

Second, Petitioner has a liberty interest in notice and the opportunity to be heard before she is removed to a third country. *See Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Petitioner has a clear protected liberty interest in ensuring his removal is not to a country where Petitioner faces a credible fear of persecution, torture, and death."); *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1137 (E.D. Cal. 2025) (considering petitioner's due process challenge the government's third country removal policies and concluding "Petitioner has a protected liberty interest in having an immigration judge review USCIS's determination on his fear-based claim regarding removal to Cameroon.").

Petitioner was granted withholding of removal from deportation to Zimbabwe. Respondents have not offered any evidence they advised Petitioner where she was being removed to when ICE arrested her and revoked her order of supervision on August 14. The "notice of revocation" states "ICE has obtained a travel document and scheduled your removal to take place no later than 8/19/2026," but on the notice the "Country of Removal" information is blank. (Dkt. No. 8-2 at 11.) The I-213 Record of Deportable/Inadmissible Alien states ICE agents "explained they would be removed to a third country," but neither it nor any other document identify Cameroon as the third country. (Dkt. No. 8-1 at 19; *see also* Dkt. No. 8-1, Deportation Officer Gallardo-Coriano Decl. at ¶ 8 ("Petitioner was informed of the reasons the OSPU was being revoked, and that she would be removed to a third country".) While the habeas petition indicates

Petitioner was told she would be removed to Cameroon, it alleges she was not "given the opportunity to express her fear of being sent to a third country, specifically Cameroon." (Dkt. No. 1 at ¶ 6.) Section 1231(b)(2) of the INA sets out the procedure by which the Secretary of Homeland Security determines the country of deportation for a noncitizen who has received a final removal order. *See Lam v. Albarran*, No. 25-CV-09980-NW, 2025 WL 4479437, at *3 (N.D. Cal. Dec. 23, 2025) (discussing the requirements for third country removals under Section 1231(b)(2)). While Section 1231(b)(2)(E)(vii) allows removal to a third country, before being removed to "another country," the noncitizen "must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "[L]ast minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016).

The Court thus turns to what procedures are constitutionally sufficient to protect Petitioner's protected liberty interest applying the three-part test established in *Matthews v. Eldridge*. This framework requires a court to consider:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of these factors weighs in Petitioner's favor.

First, as noted above, Petitioner has a substantial liberty interest in remaining out of custody as she has been for the past 11 years. She has significant community ties after building a life here over the past two decades. *See, e.g.*, *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life"); *Ortega v. Bonnar*,

415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community). Petitioner also "has a substantial private interest in not being removed to a third country with which [s]he has no connection, or where [s]he faces potential persecution, torture, and death." *Gonzalez-Sanchez v. Warden of Cent. Valley Annex*, No. 1:26-CV-04375-DC-CKD P, 2026 WL 2212535, at *3 (E.D. Cal. July 31, 2026), *report and recommendation adopted sub nom. Gonzalez-Sanchez v. Cent. Valley Annex*, No. 1:26-CV-04375-DC-CKD (HC), 2026 WL 2294819 (E.D. Cal. Aug. 10, 2026) (collecting cases).

Second, the risk of erroneous deprivation is substantial:

> [u]nder current DHS policy, removal may be effectuated without notice and opportunity to be heard, and even where noncitizens are provided notice of removal, fear-based claims are assessed on a highly expedited bases by an immigration officer. Without notice, adequate time to prepare, or the ability to present fear-based claims before an immigration judge, Petitioner will not have a meaningful opportunity to assert fear of removal, present evidence of [her] claim, or receive a determination from a neutral arbiter

*Escobar*, 2025 WL 3687639, at *4.

Finally, Respondents have a low level of interest in detaining Petitioner until her removal is "reasonably foreseeable" without a pre-deprivation hearing before an immigration judge because the Government already determined in 2014 that Petitioner was not a flight risk nor a danger to the community and has not offered evidence anything has changed in this regard. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger to the community."). And Respondents offer no evidence Petitioner's removal is reasonably foreseeable as they have not provided evidence Cameroon is willing to accept Petitioner for a third-country removal under 8 U.S.C. § 1231(b)(2)(E). "[T]hird country removal still requires the affirmative assent of the receiving country." *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1161 (S.D. Cal. 2026) (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). "Even if Petitioner was to be removed to a third country, that process would require additional, lengthy proceedings because of Petitioner's right to seek fear-based relief."

United States District Court
Northern District of California

*Riveros Cadavid v. Dep't of Homeland Sec*., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17, 2026) (cleaned up). "[T]he fact that Petitioner likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future." *Ndandu*, 819 F. Supp. 3d at 1162 (cleaned up).

In sum, each of the *Matthews* factors favor Petitioner and she has demonstrated, at a minimum, serious legal questions regarding her due process claim.[2]

**C. Irreparable Harm**

Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief because of the risk of re-detention and the risk of removal to a third country without an opportunity to present a fear-based claim which would be in violation of her procedural due process rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

**D. Balance of Hardships and the Public Interest**

Lastly, the balance of the equities and the public interest, which merge in this case because the government is the opposing party, tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Specifically, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up). Thus, the balance of equities and public interest favors maintaining the status quo, enjoining the Government from detaining Petitioner without a pre-deprivation hearing before a neutral immigration judge and requiring Respondents to provide Petitioner with notice and an opportunity to present a fear-based claim.

//

[2] Having so concluded, the Court need not address her substantive due process or APA claims.

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's request for a preliminary injunction. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and a pre-detention hearing before a neutral decisionmaker. Further, the government is restrained from removing Petitioner to any third country without first providing her notice and a meaningful opportunity to be heard on a fear-based claim before an immigration judge. The government does not request, and the Court declines to require, a security.

This Order shall remain in effect until further order of the Court.

The parties shall meet and confer and, within 14 days of the date of this order, propose a schedule for resolving the remainder of this case or a stipulation that the reasoning in this order warrants granting the petition and entering judgment.

**IT IS SO ORDERED.**

Dated: September 8, 2026

JACQUELINE SCOTT CORLEY
United States District Judge